George E. Jackson and Elizabeth L. Jackson, Plaintiffs-Appellees, v. Country Mutual Insurance Co., an Illinois Corporation, Defendant-Appellant.

Gen. No. 10,437.

Third District.

May 20, 1963.

Dunn, Dunn & Brady, of Bloomington, for appellant.

Chester Thomson and Loren Thomson, of Bloomington, for appellees.

ROETH, JUSTICE.

Defendant issued its policy of automobile insurance to plaintiffs as co-owners of an automobile. This pol-

icy contained a so-called "medical pay" provision as follows:

> "To pay the reasonable expense of necessary medical, dental, surgical, ambulance, hospital, and professional nursing services, and medical supplies including the cost of prosthetic devices for injuries arising out of the accident, all incurred within one year from the date of accident, . . ."

In connection with this provision the policy provided as follows:

> "Any person or his representative claiming benefits under this Section shall upon request of the Company furnish complete information pertaining to the accident or injury and execute authorizations to obtain medical reports and copies of records; and any injured person claiming benefits hereunder shall upon request of the Company submit to physical examination by medical examiners of the Company's choice."

On October 31, 1960, plaintiff Elizabeth L. Jackson, while occupying the above automobile, was involved in an automobile collision with another automobile being driven by one Donald Whittinghill, who was also insured by the defendant. Elizabeth Jackson was removed by ambulance to the Brokaw Hospital. She remained in the Brokaw Hospital until November 2, 1960, under the care of Dr. Ray W. Doud. She made an office visit to Dr. Doud on November 4, 1960, who noted a painful right leg and hip and referred her to Dr. Gordon Schultz. On November 5, 1960, she saw Dr. Schultz, who examined her. She continued under his care until September, 1961. From November 21, 1960, to November 27, 1960, she was hospitalized in St. Joseph Hospital under the care of

Dr. Schultz. She was again hospitalized in Brokaw Hospital in April, 1961, at which time Dr. Schultz performed surgery on her right knee to remove cartilage. Defendant has been furnished with a copy of all of the bills covering the foregoing and it is agreed that the bills are reasonable.

On February 23, 1961, Elizabeth L. Jackson commenced suit against Donald Whittinghill to recover damages for her personal injuries sustained as a result of the automobile collision. The same attorneys who appear for the defendant in the case at bar also represented the defendant in this personal injury suit. This case was tried to a verdict on September 21, 1961. During the pendency of this suit from February, 1961, to September, 1961, and in connection therewith, defendant was furnished with copies of medical reports from Dr. Doud and Dr. Schultz, copies of the hospital records, and copies of the bills. Defendant took the discovery depositions of both Dr. Doud and Dr. Schultz and cross-examined them when they testified on the trial. Also in connection with the above personal injury suit, defendant requested a medical examination by a doctor of their own selection. This was granted and on September 7, 1961, a Dr. Ball made a comprehensive examination and furnished defendant's counsel with his report. This report contained the following:

"I have suggested the patient return on September 11th for x-ray of the back and some laboratory study, which she has agreed to do. Perhaps a neurological examination could further evaluate the cause of the leg pain and could determine whether or not it is associated with the back. Also, perhaps it would be wise to try to evaluate more completely the cause of the back pain, either on the basis of a ruptured disc or perhaps

ruling out the disc being the cause of the continued and persistent leg pain.

"In reviewing the x-ray reports, it is noted that there are spurs noted on some of the thoracic vertebra. This may suggest some arthritis of the spine. Due to the persistent tenderness in the scar of the right knee and lack of intervals of almost complete relief of pain in the back and leg, I would suggest that the patient be examined by a neurologist for evaluation of the back and leg pain and perhaps it would be possible to determine whether or not the leg pain is related to the back."

Upon receipt of this report, the defendant requested Elizabeth Jackson to submit to a second examination by a Dr. Barringer in Springfield. This she refused to do, whereupon the case was set for trial and tried to verdict.

It appears from the record, that prior to the conclusion of the above personal injury suit, plaintiff had requested payment of her bills under the medical pay provision of the policy. Payment had been refused on the ground that there had been a lack of compliance with the conditions of the policy. After the personal injury suit had been concluded the demand was renewed. On October 30, 1961, the defendant again requested plaintiff to submit to an examination by Dr. Barringer of Springfield, claiming the right to require such examination under the conditions applicable to the medical pay clause. Plaintiff refused and defendant refused to pay. A suit followed which was tried without a jury and resulted in a judgment for plaintiff for $1221.40, the amount of her medical bills. This appeal followed.

■ Defendant first contends that the discharge of plaintiff's obligation in the tort action does not discharge her obligation in connection with the con-

tract. Although counsel adroitly avoid saying so, this contention if carried to its logical conclusion would mean that in order to recover under the contract for medical pay plaintiff would have to again submit her bills, hospital records, medical reports of attending physicians and submit to further examination by medical examiners of defendant's choice, even though it has in its possession all of this data. We find no merit in this contention.

 The only other contention of defendant is that plaintiff was required to submit to an additional examination by Dr. Barringer, under the conditions attached to the medical pay clause and that having refused to do so she cannot recover. In construing a policy of insurance courts should consider the instrument as a whole, and endeavor to ascertain the intention of the parties from the written words used, taking into account the situation of the parties, the nature of the subject matter with which they are dealing, and the purpose which the parties sought to accomplish. Policies of insurance should be liberally construed in favor of the insured so as not to defeat without a plain necessity, his claim for indemnity, which, in taking the insurance, it was his object to secure. Canadian Radium & Uranium Corp. v. Indemnity Ins. Co. of North America, 411 Ill 325, 104 NE2d 250. We think that the basic purpose of medical pay provisions such as here involved, is to make available a fund to assure prompt and adequate medical care when injury is incurred, to relieve the physical suffering of the insured and to relieve the insured of the anxiety of not knowing from what source the money to pay the bills is coming. In this day and age of increased demand for hospital and medical care, hospitals and members of the medical profession require prompt payment of their bills for services whenever possible. On the other hand, the

insurer is entitled to know that there is a causal connection between the medical treatment given and the injuries sustained. In the normal sequence of events following an injury, the insured would submit medical bills, reports of attending physicians and make available the hospital records to the insurer. If it determined that the bills were reasonable and that the treatment given was made necessary by the injuries received, no problem would arise. If in doubt as to these factors, the insurer is given the right of physical examination to undertake to resolve the causal connection element. The crux of the problem before us is, to what length does the right of physical examination extend. It is to be noted that the language of the policy is "submit to physical examination by medical examiners of the company's choice." The phrase "physical examination" imports the singular and would appear to refer to a single examination. There is coupled with the phrase, however, the words "by medical examiners" which is plural in context. If the defendant's theory is tenable, there is no definite limit as to the number of physical examinations that may be required of the insured. Who is to say at what point the insured is warranted in refusing to further submit to examinations? It is, of course, conceivable that more than one examiner might be necessary in a given case to determine the causal connection element. This conception is met, and the general purpose as heretofore outlined is fostered, if the policy provisions are construed to mean a single physical examination by such number of medical examiners as the insurer may deem necessary to be present. The trial court so held and we are of the opinion that this holding was correct.

Affirmed.

REYNOLDS, PJ and CARROLL, J, concur.