LOYOLA UNIVERSITY MEDICAL CENTER, Plaintiff-Appellee, v. MED CARE HMO, Defendant-Appellant.

First District (4th Division)   No. 1—88—1459

Opinion filed March 9, 1989.

Jenner & Block, of Chicago (Russ M. Strobel, Cathy Houston McNeil, and Mark A. DuPont, of counsel), for appellant.

Hayt, Hayt & Landau, of Evanston (Raymond E. Clutts, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

This is a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). Loyola University Medical Center

(Loyola) brought suit to recover from Med Care HMO the amounts it expended for providing medical services to the child of a Med Care enrollee. Counts I and II of Loyola's complaint seek compensatory damages for its usual and customary charges for services rendered. Count III asserts a claim for attorney fees and exemplary damages pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767).

Med Care moved for dismissal of count III on the ground that Loyola had no standing to raise a section 155 claim because only an insured can make such claim. The trial court denied the motion but certified certain issues pertinent to this question. This court has granted review of the certified issues.

BACKGROUND

Loyola is a not-for-profit, Illinois corporation which owns and operates Foster G. McGaw Hospital. Shonta Hicks' infant daughter was treated there from birth on October 27, 1986, through February 18, 1987. During oral argument, Loyola's attorney represented that the baby girl was born prematurely and, accordingly, transferred to McGaw because of that hospital's neonatal facilities, which the health care providers in Med Care's pool did not have available.[1]

During the course of Baby Girl Hicks' admission, Shonta Hicks executed a form entitled "Admitting Authorization Record." One of the provisions of the form states as follows:

**"Payment Guarantee/Assignment Of Insurance Benefits**

For and in consideration of hospital care to the above patient, I/we agree to pay the established rates of Foster G. McGaw Hospital and its physicians for all services, facilities, and supplies rendered hereunder."

"I hereby authorize insurance payment(s) to be made directly to the physician or physician of the Loyola Medical Center involved in the patient's care and to the hospital for services ren-

[1]Generally, a beneficiary/enrollee of an HMO (health maintenance organization) must obtain medical services from one of a group of physicians and hospitals who are under contract with the HMO. The HMO pays the member-provider for the medical services rendered and the provider has no right of recourse against the enrollee. (See Ill. Rev. Stat. 1987, ch. 111½, par. 1407.01.) If the enrollee seeks medical treatment outside of the plan, as in an emergency in which no HMO provider is available, the HMO is generally bound to pay that nonmember hospital or physician, subject to conditions contained in the subscription certificate. By statute, HMOs are required to cover newborns of enrollees from birth and "such coverage shall include illness *** and premature birth." Ill. Rev. Stat. 1987, ch. 111½, par. 1409.1(2).

dered, but the hospital payment shall not exceed the hospital's regular charge for this period of hospitalization. I understand that I am financially responsible for all hospital and physician charges not covered by my insurance plan."

According to Loyola's complaint, Med Care confirmed Baby Girl Hicks' eligibility for coverage and quoted the benefits to which the infant was entitled under Med Care's subscription certificate. The hospital treated the premature infant and participated in certain quality review procedures required by law.

Loyola produced monthly interim billings, which it sent to Med Care, and produced a final summation of itemized charges of $121,486.55. Med Care paid only $27,384.53. Med Care refused to pay the balance, which is the subject of counts I and II of the complaint. Count I alleges breach of contract based on the assignment and count II alleges detrimental reliance/estoppel. Count III seeks statutory damages for Med Care's allegedly vexatious and unreasonable refusal to reimburse Loyola for its services.

Med Care moved to dismiss count III on the ground that Loyola lacked standing as a noninsured and that, to the extent Loyola claimed to be an assignee of Hicks', the assignment was void because Med Care's general policy required advance written approval before policy benefits could be assigned.

In denying the motion to dismiss, the trial court certified these questions for review:

"a. Whether the language contained in LOYOLA's 'Payment Guarantee/Assignment of Insurance Benefits' is sufficiently unambiguous, as a matter of law, to constitute a valid assignment of all contractual rights to reimbursement for those services rendered by LOYOLA UNIVERSITY MEDICAL CENTER to Baby Girl Hicks during the entire course of Baby Girl Hicks' admission, absent any other contradictory evidence regarding Shonta Hicks' intent to assign benefits.

b. Whether Shonta Hicks' execution of the assignment of benefits prior to the point where Loyola had completed its course of treatment constitutes the transfer of a right to payment when a loss under the policy is imminently to be incurred, is not prevented by MED CARE HMO's general policy provision prohibiting an insured's assignment of benefits before a loss has occurred.

c. Whether LOYOLA's status as an assignee of Shonta Hicks' subscription certificate benefits entitles it to assert a claim against MED CARE HMO, pursuant to *Ill. Rev. Stat.*,

(1985) ch. 73, §767, for the damages sustained from MED CARE's alleged vexatious and unreasonable failure to settle LOYOLA's claim for services rendered to Baby Girl Hicks."

OPINION

Loyola asserts its status as an assignee of all the rights and benefits to which Med Care's enrollee, Shonta Hicks, was entitled. According to Loyola, the assignment gives it standing to assert a claim for damages stemming from Med Care's alleged vexatious and unreasonable denial of the balance of the claim under the insurance policy.

Med Care maintains that Hicks' assignment of benefits under the insurance policy was void and that in any event only an insured can assert a damages claim under section 155 of the Insurance Code.

Initially, we note that Loyola's claim for compensatory damages in counts I and II, as well as exemplary damages in count III, depends on the validity of the assignment.

I

■■ Regarding the first certified question set out above, we note that the crux of this initial issue is whether the language contained in Loyola's admitting form is "sufficiently unambiguous *** to constitute a valid assignment of all contractual rights to reimbursement for those services rendered by [Loyola] *** during the entire course of Baby Girl Hicks' admission."

By its terms the excerpted provision from the admitting form contemplates assignment of benefits, as indicated in the boldface heading "Payment Guarantee/Assignment of Benefits." The first paragraph under the heading concerns the insured's guarantee of payments in exchange for and consideration of Loyola's medical services. The second paragraph authorizes Shonta Hicks' insurance provider (Med Care) to pay Loyola directly for those services. It further stipulates that the insurance payments to Loyola shall not exceed its regular charges and that Hicks would remain responsible for all charges not covered by her insurance plan.

We find the provision to be an unqualified intention to transfer to Loyola all of Shonta Hicks' rights to reimbursement under the policy for covered services. Absent evidence tending to show a contradictory intention, the words appear sufficient to operate as a full assignment of the right to reimbursement. (See *Dr. Charles W. Smith III, Ltd. v. Connecticut General Life Insurance Co.* (1984), 122 Ill. App. 3d 725, 462 N.E.2d 604 (words which reflect an intent to transfer an actionable right to reimbursement for valuable consideration are sufficient

to create an assignment); *Robert S. Pinzur, Ltd. v. The Hartford* (1987), 158 Ill. App. 3d 871, 511 N.E.2d 1281 (no valid assignment created where no evidence of parties' intent to create assignment existed beyond direct payment authorization, which did not evidence patient's receipt of consideration and did not provide that patient would remain liable for amounts not covered); *McHenry Hospital v. Metropolitan Life Insurance Co.* (N.D. Ill. 1983), 578 F. Supp. 122.) In *McHenry*, the court noted that "mechanisms for direct payment to providers of health care should be encouraged and facilitated in the interest of insureds, the providers and the insurance industry as well. Treating these authorization forms as assignments would appear to accomplish this result and to be consistent with the Illinois law of assignments." 578 F. Supp. at 124-25.

Med Care does not raise any disputed factual issue regarding the intent of Hicks or Loyola pursuant to this agreement but asks us to find it invalid as a matter of law. In support, Med Care cites two cases from other jurisdictions in which courts held that a direct payment authorization did not constitute an assignment. (*Presbyterian Hospital v. National Life & Accident Insurance Co.* (Tex. Civ. App. 1972), 480 S.W.2d 497; *Piedmont Southern Life Insurance Co. v. Gunter* (1963), 108 Ga. App. 236, 132 S.E.2d 527.) In light of the Illinois authorities cited above, however, we need not address the law of other jurisdictions.

The record contains no evidence that Hicks did not intend to assign her rights to payment from Med Care. The agreement between her and Loyola was supported by consideration. No contract element appears to be lacking. We conclude that the language of the "payments guarantee/assignment of benefits" is sufficiently unambiguous as to constitute a valid assignment under these circumstances, as a matter of law.

II

■ Med Care nevertheless argues that any assignment of benefits was prohibited without its prior written consent. For this it cites a provision in the "Med Care Subscription Certificate for Medicaid Recipients of the State of Illinois." This document is subtitled "A Group Service Agreement Between the Illinois Department of Public Aid and Med Care Health Maintenance Organization." The language in question provides: "No interest in the Group Service Agreement, in this Certificate, or in any Identification Card issued pursuant thereto is assignable without prior written consent of MED CARE." The paragraph goes on to state that the identification card is not transferable

and that only a beneficiary is entitled to any benefit under the certificate.

This nonassignability clause presumably is designed to prevent the transfer of benefits that are personal to the insured, coverage for "loss." If a beneficiary can assign his policy to a third party before a loss is incurred he may well alter the risk that the insurer has underwritten.

In this case, however, Loyola argues that the nonassignability language does not bar assignments of the *right to payment*, once the loss is incurred. The medical condition or injury necessitating treatment is the "loss," which is sustained by the insured and no other person. The right to payment or reimbursement for that loss then can be transferred to other parties because it is a chose in action.[2]

The trial court certified the issue raised under this argument as "[w]hether Shonta Hicks' execution of an assignment of benefits prior to the point where LOYOLA had completed its course of treatment constitutes the transfer of a right to payment when a loss under the policy is imminently to be incurred, is not prevented by MED CARE HMO's general policy provision prohibiting an insured's assignment of benefits before a loss has occurred."

While this issue might have been stated more clearly, the essential point is whether the assignment was effective when signed (before treatment) because of the continuing nature of the services, or whether it is an ineffective attempt to assign benefits for future losses. Both Loyola and the trial court relied on *Lain v. Metropolitan Life Insurance Co.* (1944), 388 Ill. 576, 58 N.E.2d 587. There the court distinguished between the situation in which the personal character of the insured is in issue (before loss, or in the coverage stage) and those in which the right to be assigned is simply the right to payment of the amount due, a chose in action. The court stated, "The general rule, supported by a great wealth of authority, is that general stipulations in policies, prohibiting assignment thereof except with the insurer's consent, or upon giving some notice, or like conditions, have universally been held to apply only to assignments before loss, and, accordingly, not to prevent an assignment, after loss, of the claim or

---

[2] "Loss" is not defined in Med Care's certificate. Although Med Care argues that Hicks' loss is the actual rendering of medical services, it cites no authority for that position. In ordinary terms, an insured's loss would seem to be his or her injury, whether to himself, property, or business expectations. Under a fire policy, for example, an insured's loss may be the damage to the burned building, contents, and interruption of business. The loss would not equate with the actual reconstruction of the building, as Med Care's position would seem to require.

interest of the insured in the insurance money then due in respect to the loss." 388 Ill. at 578, 58 N.E.2d at 588.

The critical distinction in assignability, as the Illinois Supreme Court stated in *Ginsburg v. Bull Dog Auto Fire Insurance Association* (1928), 328 Ill. 571, 573, is this: "After the contract has been fully executed and nothing remains to be done except to pay the money a different rule applies [regarding assignability]. The element of the personal character, credit and substance of the party with whom the contract is made is no longer material, because the contract has been completed and all that remains to be done is to pay the amount due. The claim becomes a chose in action, which is assignable and enforcible under [statute]."

In *Lain* the court further noted that prohibitions on free assignability of such choses in action may violate public policy. *Lain*, 388 Ill. at 580.

The trial court characterized Loyola's continuing course of treatment as ongoing performance of the consideration it gave for Hicks' execution of an assignment. The transaction was thus referred to as a "continuously speaking" assignment.

We agree with the trial court's construction. What Hicks assigned was her present conditional right to the insurance proceeds. (Restatement (Second) of Contracts §321, comment *a* (1981).) A valid assignment of a conditional right is enforceable in equity. (*Robert S. Pinzur, Ltd. v. The Hartford* (1987), 158 Ill. App. 3d 871, 877, 511 N.E.2d 1281.) Hence, the assignment attaches to each installment of money "to become due" under an existing contract as it becomes due and payable to the assignor. See S. Williston, Contracts §412, at 34-35 (3d ed. 1960) (and cases cited therein).

Med Care does not explain how Hicks' assignment of her right to reimbursement for medical fees altered the risk that it underwrote when Hicks was accepted into the HMO program. Moreover, Med Care admits to paying a portion of Loyola's fees. Loyola alleges that Med Care knew that it was providing care for Hicks' infant, participated in or reviewed the need for Hicks to receive treatment at Loyola, and otherwise approved of the assignment by not objecting. Med Care did not put Loyola on notice that Med Care considered the services as noncompensable under its certificate on the grounds that it did not give prior written consent. In fact, Med Care's partial payment and other acts may be considered a waiver of strict compliance with the prior written approval clause. Written provisions are always subject to consensual modification, which may be inferred by the parties' conduct as well as words. In any event, we cannot say that the

provision in question bars the assignment as a matter of law.

## III

The final issue under review is whether Loyola's "status as an assignee of Shonta Hicks' subscription certificate benefits entitles it to assert a claim [for damages from] Med Care's alleged vexatious and unreasonable failure to settle Loyola's claim for services rendered to Baby Girl Hicks."

This issue embraces two questions. First, must the assignment expressly refer to the statutory claim under section 155 of the Insurance Code to cause a valid transfer of this claim? Second, can Loyola validly assert its *own* claim for vexatious delay against Hicks' insurer?

## A

Med Care argues that the assignment language was not specific enough to transfer a claim under section 155 and that in any event there was no section 155 claim to transfer at the time of the assignment. Therefore, since Hicks had no section 155 claim to assign and Loyola's form did not refer to any such claim, Loyola is not entitled to make the claim as assignee.

■ It is true that the subject of an assignment must be sufficiently identified. (*E.g., Heritage Bank v. Recreational Retail Builders, Inc.* (1981), 97 Ill. App. 3d 748, 753, 423 N.E.2d 573.) Moreover, an assignor cannot assign a claim that she no longer possesses. (See *Litwin v. Timbercrest Estates, Inc.* (1976), 37 Ill. App. 3d 956, 958-59, 347 N.E.2d 378, 380.) Nevertheless, the present transfer of rights that are not yet due or may never become due is effective if it appears that there is an existing contract out of which the debt may arise. S. Williston, Contracts §413, at 55 (3d ed. 1960).

Moreover, the courts considering the specific issue of whether a section 155 claim is transferable under a general assignment of benefits have answered in the affirmative. In *McHenry Hospital v. Metropolitan Life Insurance Co.* (N.D. Ill. 1983), 578 F. Supp. 122, 126, the court noted that if the hospital in that case had received an assignment of the insured's contract rights, "then the Hospital has acquired the full bundle of contract and incidental rights possessed by the insured. The identity of interest between the Hospital and the insured and the obvious efficiency and humaneness of a direct payment mechanism, make clear that the Hospital, if it is an assignee of the insured's right to payment, should be permitted the full panoply of statutory and common law recourse to effectuate the important policy that legitimate health insurance claims be settled expeditiously and

fairly." In *Aabye v. Security-Connecticut Life Insurance Co.* (N.D. Ill. 1984), 586 F. Supp. 5, the court held that a policy assignee had standing to sue an insurer under section 155.

We are aware of the Illinois decisions holding that a section 155 claim cannot be brought by third parties. (See *Stamps v. Caldwell* (1971), 133 Ill. App. 2d 524, 528, 273 N.E.2d 489; *Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 393 N.E.2d 718; *Robertson v. Travelers Insurance Co.* (1981), 100 Ill. App. 3d 845, 849, 427 N.E.2d 302.) In *Yassin v. Certified Grocers of Illinois, Inc.* (1988), 178 Ill. App. 3d 498, the court cited the above cases as holding that the vexatious delay provision is restricted to actions brought by the insured, not third parties. However, the court also distinguished the case of *Aabye v. Security-Connecticut Life Insurance Co.* (N.D. Ill. 1984), 586 F. Supp. 5 (in which the court allowed a policy-assignee to sue under this section), on the grounds that assignee status is not the same as third-party status.

We believe that an assignee of the insured succeeds to the same position as the insured and is not a true third party. In *Scroggins, Stamps,* and *Robertson,* the section 155 claimants were neither the insureds nor assignees of the insureds.[3] *Scroggins* explained that *creditors* of insureds were not allowed to assert the insured's right of action directly against the insurer because that action was for the protection of the insured, not third parties. For the same reason, creditors of insureds were not to be considered third-party beneficiaries of the insurance policy. Nevertheless, *Scroggins* stated that where the insured's claim for wrongful failure to settle is assignable, a third party may acquire and prosecute the claim by assignment. This rea-

---

[3]*Stamps* apparently originated the rule that section 155 of the Insurance Code does not apply to third-party claims, although the statute does not state this and the one case the *Stamps* court cited was resolved on the grounds that the delay involved was neither unreasonable nor vexatious.

*Scroggins* was not decided under section 155. Instead, the injured plaintiff's claim against the defendant's insurer was one sounding in bad-faith refusal to settle the insurance claim. *Scroggins* held that any such cause of action for bad-faith refusal to settle belonged exclusively to the insured, not third parties. Hence, the insurer had no *duty* to the injured party.

*Robertson* initially noted that if section 155 were deemed to be an exclusive remedy for exemplary damages against insurers, it was a remedy belonging to insureds only (citing *Stamps* and *Scroggins*). Thus, section 155 did not bar *third parties* from suing insurance companies under an outrage theory based on bad-faith refusal to settle a claim. *Robertson* cannot be squared with *Scroggins,* which held that the injured plaintiff could not directly sue the defendant's insurance company under the bad-faith refusal to settle the insurance claim theory.

None of these cases bars Loyola as assignee from asserting a section 155 claim.

soning is consistent with that of *Yassin, McHenry,* and *Aabye.*

Based on our analysis of the pertinent law, we hold that Loyola, as assignee of Hicks, had standing to bring a claim under section 155.

## B

■ However, Loyola has conceded that its claim is not that of Med Care's unreasonable and vexatious delay regarding payments to Shonta Hicks. Instead, Loyola's claim is for unreasonable and vexatious delay as to Loyola.

We do not find it contradictory that Loyola, as assignee of Shonta Hicks, is nevertheless asserting its "own" claim for section 155 damages. By their nature, such claims cannot arise unless and until the insurer has refused to make payments. Since Hicks had assigned her rights to these payments to Loyola, Loyola became the party owning the incidental right to any exemplary damages accruing if Med Care vexatiously refused to pay. In that limited sense, Loyola became the "insured." Because the insured and her assignee in this instance are interchangeable for purposes of the duty to pay, the insurer cannot circumvent section 155 by calling the assignee a "third party."

## IV

■ The final argument Med Care makes to defeat Loyola's section 155 claim is much broader. Med Care suggested at oral argument that allowing Loyola and other assignees to maintain section 155 claims would amount to the creation of a market for these claims. This in turn would result in increased litigation and attendant costs that might put HMOs out of business.

This latter argument was not raised in Med Care's briefs and is therefore waived. Whether or not our holding may create a "market" for assignees of HMO enrollees with section 155 claims is a matter of sheer speculation. The legislature has made section 155 applicable to HMOs (Ill. Rev. Stat. 1987, ch. 111½, par. 1409A), and we find no reason to accord them a special exclusion that other insurers would not enjoy. Moreover, the statute is aimed at penalizing unreasonable and vexatious delay, not delay in payment that results from an honest difference of opinion or reasonable reading of the pertinent law. (*Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 999, 493 N.E.2d 638.) In the pending case, recognizing that Loyola has standing to assert a claim is far removed from the ultimate finding that Loyola has proved it. The fact finder may determine that there was a *bona fide* dispute as to the validity of the assignment and Loyola's legal capacity to bring the section 155 claim.

To the extent that our holding may allow others in Loyola's position to assert a section 155 claim, Med Care and other insurers are now on notice that a medical services provider who takes a valid assignment of benefits from the insured has standing to maintain a claim for damages if the insurer is found liable for unreasonable and vexatious delay in remitting the payment due to the assignee.

We conclude that Loyola has standing, by virtue of its assignment of benefits from Shonta Hicks, to assert its claim for damages pursuant to section 155 of the Insurance Code.

For the foregoing reasons, we affirm the trial court's denial of Med Care's motion to dismiss count III of Loyola's complaint. We also affirm the trial court's ruling on each of the certified issues and remand this cause for further proceedings.

Affirmed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.