MICHELLE M. GARCIA, Plaintiff-Appellant, v. ANDREA LOVELLETTE, Defendant (Aaron Tovar, Plaintiff; Horace Mann Insurance Company *et al.*, Defendants-Appellees).

Second District    No. 2—93—0531

Opinion filed August 23, 1994.

John R. Wienold and Deborah J. Allen, both of John R. Wienold & Associates, Ltd., of Aurora, for appellant.

James T. Ferrini, Imelda Terrazino, Dominick W. Savaiano, and Paul Bozych, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Michelle M. Garcia, appeals following the circuit court's denial of her motion to reconsider the dismissal with prejudice of counts III and IV of her amended complaint which sought statutory penalties for the unreasonable and vexatious delay of defendant's insurer, Horace Mann Insurance Company (insurer) and its agent-adjuster, Gerald Shannon (agent), in paying her medical expenses. We reverse and remand for further proceedings.

On February 1, 1991, plaintiffs, Michelle M. Garcia and Aaron Tovar, filed a two-count negligence complaint against defendant Andrea Lovellette following a car accident. The complaint alleged that Lovellette negligently drove the car off the road and, as a result, Garcia sustained injuries. Plaintiffs later amended the complaint and

added counts III and IV seeking penalties under section 155 of the Illinois Insurance Code (Code)(215 ILCS 5/155 (West 1992)) against defendant's insurer and Gerald Shannon, individually and as agent of the insurer, for their unreasonable and vexatious delay in paying Garcia's medical bills pursuant to a specific medical payment provision in the policy issued to defendant Lovellette by the insurer. Garcia (plaintiff) has maintained both here and in the trial court that she is an "insured" passenger or occupant of the vehicle under that policy provision and is therefore entitled to pursue the statutory remedy.

The trial court granted the motion of the insurer and the agent to dismiss counts III and IV with prejudice. After plaintiff's motion to reconsider was denied, she timely appealed. Tovar and Lovellette are not parties to this appeal.

Plaintiff argues she was a passenger, and, as a passenger, was an "insured" as defined in the medical payments section of the policy; according to plaintiff, she therefore has standing to sue the insurer under the Code for unreasonable and vexatious delay in making such payments. She relies in part on *Monroe v. United States Fidelity & Guaranty Co.* (1992), 237 Ill. App. 3d 261 (passenger had standing as an "insured," as defined in policy, to bring action for declaratory relief against driver's insurer based on violation of underinsured motorist statute). The insurer argues that plaintiff is an injured third-party claimant and not an insured to whom it owes a contractual duty of good faith and fair dealing (see, *e.g.*, *Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027) and that, as a third party, plaintiff cannot bring a section 155 claim against it (see *Loyola University Medical Center v. Med Care HMO* (1989), 180 Ill. App. 3d 471, 480). The insurer further argues that its insurance policy informs the named insured that it does not "[g]ive any person or organization the right to include us to [*sic*] any suit against you to determine your liability." According to the insurer, this is a "no direct action clause" consistent with the Illinois public policy prohibiting direct actions by an injured claimant "*against the alleged tortfeasor's insurer.*" (Emphasis added.) The insurer relies on *Zegar v. Sears Roebuck & Co.* (1991), 211 Ill. App. 3d 1025.

This case is one of first impression for this court. We must determine (1) whether plaintiff is an "insured" for purposes of the statutory remedy and, if so, (2) whether her "direct action" against the insurer would violate Illinois public policy. The policy issued to Lovellette initially defines an insured as "the person, persons or organization defined as insured in the specific coverage" and states that the meaning of "insured" varies in separate coverage sections. For

example, in the indemnification section (I) for bodily injury "A" and property damage "B" coverages, when reference is made to the policyholder's car, "insured" is defined as:

"1. you

2. your relatives;

3. any other person while using your car if its use is within the scope of your consent; and

4. any other person or organization liable for the use of your car by one of the above insureds."

Among other things, that section provides that the insurer will pay damages for which an insured "becomes legally liable to pay" for bodily injury to others and for the destruction or loss of use of property resulting from the ownership, maintenance or use of the car and provides that the insurer will defend an "insured" for such damages.

Section II, the section in question, provides coverage "C" for medical payments and for the loss of income or services under certain conditions. Under that section, the insurer agrees to pay "to persons insured" the medical expenses "for services furnished within one year of the date of the accident." Under the rubric "PERSONS INSURED," that section states:

"We will pay Medical Payments and Loss of Income or Services benefits to:

1. a. you, and

b. your relatives.

You or your relatives have to sustain the injury:

a. while you or they operate or occupy a motor vehicle or trailer insured under Section I, or

* * *

2. Any other person while occupying:

a. a motor vehicle or trailer insured under Section I, except a non-owned car. Such vehicle or trailer must be used by a person who is insured under Section I; or

b. a non-owned car. The injury must result from such non-owned car's operation or occupancy by you or your relatives. We will reduce all payments made under other liability coverages by the amount paid under Medical Payment coverage."

Plaintiff Garcia submitted a claim for medical expenses, and the insurer eventually tendered a check in the amount of $5,000, the limit of the policy.

●1 Section 155 of the Code provides that a court may award attorney fees and specified penalties in an action against an insurer when the court determines, in its discretion, that the insurer's delay in settling a claim was unreasonable and vexatious considering the

totality of the circumstances. The remedy is available to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits. (*Green v. International Insurance Co.* (1992), 238 Ill. App. 3d 929, 935.) It is designed "to protect insured parties who are forced to expend attorneys' fees where the insurer refuses to pay *under the terms of the policy.*" (Emphasis added.) (*Stamps v. Caldwell* (1971), 133 Ill. App. 2d 524, 528.) A section 155 claim for an insurer's vexatious delay is intended for the protection of the insured party, or an assignee who succeeds to the same position of the insured, but is not intended for "true" third parties. (See *Loyola*, 180 Ill. App. 3d at 480 (and footnotes therein).) The insurer's duty to deal fairly with the insured arises out of the contractual relationship, and thus an insured may sue his insurer for breach of that duty. *Scroggins*, 74 Ill. App. 3d at 1030-31; *Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 207.

•2 The penalty statute is silent regarding who is an "insured" for purposes of the remedy provided. We believe that the insured must logically be a person defined in the policy provision in question here. Since that provision expressly defines an occupant of the named insured's car as an insured, plaintiff is an insured for purposes of the statute. It was the insurer who chose to define plaintiff as an insured. A clause in an insurance contract which is clear and unambiguous will be applied as written. (*Pratt v. Protective Insurance Co.* (1993), 250 Ill. App. 3d 612, 618.) A similar result was obtained in *Monroe* (237 Ill. App. 3d 261), where the reviewing court found that a passenger or occupant was an "insured" as defined in the policy for the purpose of standing to bring a declaratory action under the underinsured motorist coverage statute.

There are several other reasons which support our conclusion that plaintiff is an insured for purposes of the penalty statute and should be allowed to pursue her section 155 claim. First, the medical payment provision is not an indemnity agreement which depends on a determination of the negligence of the policyholder before the "insured" passenger may look to the insurer for payment. Rather, it is a separate agreement for direct payment to the injured passenger, the named insured, or a relative of the named insured. For a separate consideration and by the very terms of the provision, the insurer undertook an obligation to pay directly to those defined there as insureds. It amounts to a "no-fault" type of limited coverage which comes into effect upon the happening of defined events. (*Cf. Zegar*, 211 Ill. App. 3d at 1030-31 (characterized slip-and-fall plaintiff as incidental beneficiary of premises no-fault medical payment provision and as a third party barred from suing insurer directly).) Unlike

the conclusion reached in *Zegar* in which the contractual language appears to have differed somewhat from the one here (we are unaware of the definition of the insured there), we believe that the contract here was intended to benefit plaintiff directly as an insured and not merely incidentally. For reasons which we explain further, she was neither a "true" third party nor a complete stranger to the contractual relationship. Contra *Zegar*, 211 Ill. App. 3d at 1031.

The purpose of this type of medical payments provision "is to make available a fund to assure prompt and adequate medical care when injury is incurred, to relieve the physical suffering of the insured and to relieve the insured of the anxiety of not knowing from what source the money to pay the bills is coming." (*Jackson v. Country Mutual Insurance Co.* (1963), 41 Ill. App. 2d 300, 305.) Such a provision constitutes separate accident coverage divisible from the remainder of the policy which "creates a direct liability to the contemplated beneficiaries" and whose "purpose is to grant peace of mind *** so that those injured will not necessarily be contemplating how to impose liability upon the insured." (8A J. Appleman & J. Appleman, Insurance Law & Practice § 4902, at 229 (West 1981) (and cases cited therein) (hereinafter Appleman); see *Motto v. State Farm Mutual Automobile Insurance Co.* (1969), 81 N.M. 35, 462 P.2d 620 (direct obligation of insurer); *Martinez v. Gulf Insurance Co.* (1961), 68 N.M. 90, 358 P.2d 1003 (direct liability of insurer to injured for medical payments does not depend on negligence of named insured); see also *Kessler v. Cosmopolitan Mutual Insurance Co.* (1961), 33 Misc. 2d 824, 218 N.Y.S.2d 357 (insurer obligated to insured owners' passengers for medical payments without regard to issue of liability upon showing of occurrence); *Severson v. Milwaukee Automobile Insurance Co.* (1953), 265 Wis. 488, 61 N.W.2d 872 (passenger's estate was in "privity" of contract to sue insurer directly on medical payments provision).) The obligation of the insurer under this type of coverage clearly runs separately and directly to the injured person rather than to the person insured against liability under a standard automobile liability (indemnity) policy. (*Harkavy v. Phoenix Insurance Co.* (1967), 220 Tenn. 327, 333, 417 S.W.2d 542, 545; *Moorman v. Nationwide Mutual Insurance Co.* (1966), 207 Va. 244, 148 S.E.2d 874.) The insurer's obligation is in no way dependent upon the negligence of the policyholder. See Appleman, at 230.

An informative discussion of the insurer's direct obligation to pay medical payments is found in *Desmond v. American Insurance Co.* (Mo. Ct. App. 1989), 786 S.W.2d 144. There, the insurance policy provided for the payment of reasonable medical expense benefits to individuals who were injured on the premises of a theater. Plaintiff,

who fell in a theater insured under the policy, made a demand on the insurer to pay her medical bills, and the insurer paid a part of the amount requested. Based on a contract theory, the plaintiff filed a direct cause of action against the insurer for an additional $786. The *Desmond* reviewing court noted Missouri's traditional rules that a claimant is not a third-party beneficiary under a contract of liability insurance between the alleged tort-feasor and the insurer and that such a claimant had recourse through a garnishment process against the insurer only after she obtained judgment establishing liability against the tort-feasor; in other words, such a claimant ordinarily had no direct action against the insurer. However, the *Desmond* court then considered a number of authorities in which the insurance policy was found to confer a direct remedy upon the insured where the contract is made for the benefit of the third party.

In the case before it, the *Desmond* court concluded that the policy provided separate and distinct medical payment coverage for the benefit of the injured party regardless of the negligence of the named insured as opposed to indemnification to the named insured for (negligence) liability under other policy provisions. The court found it significant that payment was to be made directly to the injured party. The court concluded that the injured party was a direct rather than an incidental beneficiary of the contract. Therefore, the plaintiff had a direct cause of action on the contract against the insurer despite a lack of privity. The action was based on contract rather than tort. Having found that the plaintiff had a direct cause of action against the insured, the court remanded the cause to determine if the insurer's payment was reasonable, but determined that, under the particular circumstances of the case, a statutory penalty for vexatious refusal to pay was unwarranted.

•3 After reviewing the above-cited authorities, we conclude that a plaintiff, such as the one here, may bring a cause of action under the vexatious delay statute so long as the action does not violate Illinois' public policy generally prohibiting a direct action by a third party against the insurer. We also conclude that plaintiff's action does not violate that policy. It has been stated that "the public policy of this State prohibits an injured party from recovering personal injury damages against an insurance carrier *on account of the negligence of its insured* prior to obtaining a judgment against the insured." (Emphasis added.) (*Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 47.) The rationale for this policy is to prevent the jury in the claimant's personal injury action against the tort-feasor from becoming aware that the defendant tort-feasor is insured and thus to avoid larger awards under a "deep pockets" theory. *Ze-*

*gar*, 211 Ill. App. 3d at 1028, citing, *e.g.*, *Loeber Motors, Inc. v. Sims* (1975), 34 Ill. App. 3d 342.

The policy against direct actions is not a completely mandatory and inflexible prohibition against "third party practice." (*Gianinni v. Bluthart* (1971), 132 Ill. App. 2d 454, 460-61 (third-party complaint for costs, expenses, and attorney fees was severed from liability and damages issue and did not violate public policy).) It is applied where the issue of the insurer's liability would be intermingled with that of the insured and with the assessment of damages. *Reagor v. Travelers Insurance Co.* (1980), 92 Ill. App. 3d 99 (in declaratory judgment action by injured beneficiary of insurance policy, injured party had sufficient legal relationship to sue insurer, and public policy against direct action was not violated where issue of coverage was effectively severed from any question of the insured's liability and the assessment of damages in the pending personal injury action).

●4 Here, the policy against a direct action is not violated. First, as we have explained, the obligation of the insurer to the insured is separate and direct as the insurer undertook, through its contract, to make payment directly to the passenger. Second, the payment of medical expenses is not premised on the insurer's indemnification nor on the negligence of the policyholder. Rather, the insurer's obligation arises upon the happening of a defined event, and there is no need to intermingle the liability of the insurer with that of the named insured. (See *Pratt v. Protective Insurance Co.* (1993), 250 Ill. App. 3d 612, 619; *Loeber*, 34 Ill. App. 3d at 353-54 (Simon, J., concurring in part and dissenting in part); see also *Zegar*, 211 Ill. App. 3d at 1030-31 (referring to Justice Simon's view with approval but concluding that the injured plaintiff was only an incidental beneficiary).) In fact, payment of the medical expenses is not even the subject of this branch of the litigation, for payment has already been made, and plaintiff seeks instead compensation for vexatious delay under a statute expressly providing such a remedy to an "insured."

Additionally, for purposes of the public policy, plaintiff is not a "true" third-party tort claimant whose rights arise only incidentally from the negligence of another, but is a party who has standing to sue as a direct beneficiary of the contract for whom the payments were intended. In Illinois, a third party who is a direct beneficiary of an insurance contract has standing to enforce the obligations intended for his benefit under the contract. *Sosin v. Hayes* (1994), 258 Ill. App. 3d 949, 952, 630 N.E.2d 969, 971 (injured minor had standing as direct beneficiary to enforce insurer's obligations under medical health policy); see *In re Estate of Scott* (1991), 208 Ill. App. 3d 846 (dependent of insured was direct third-party beneficiary and contract permitted subrogation of insurer).

A contract made for the direct benefit of a third person permits the third person to sue for a breach thereof, and that right rests on the liability of the promisor appearing from the language of the contract properly construed. (*Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 657-58, citing *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381: see *Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921.) While the language of the contract is controlling, it is not necessary that the contract for the benefit of a third-party beneficiary identify him by name; the contract may define the party benefited by description of a class. *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 55.

Under the facts presented, we believe that plaintiff, as the intended beneficiary of the insurance contract, has a sufficient legal and contractual relationship to the insurer to litigate the question whether she is entitled to the remedy provided by the statute. We see no public policy reason preventing this cause of action from proceeding so long as the insurer's liability arising from the negligence of the named insured is not intermingled with the question of the insurer's conduct under the vexatious delay statute. Under the statute, it is the insurer's own conduct which is in issue, not its liability arising from the negligence of the named insured. We also observe that the statutory remedy is for the trial court to determine and does not involve a jury question. See *Myrda v. Coronet Insurance Co.* (1991), 221 Ill. App. 3d 482, 489; 215 ILCS 5/155 (West 1992).

Since plaintiff occupies a position similar to the named insured for purposes of the medical payment provision, we hold that plaintiff has standing to bring a claim directly against the insurer under section 155 of the Code. (See *Loyola*, 180 Ill. App. 3d at 480-81.) To the extent that *Zegar* (211 Ill. App. 3d 1025) suggests a contrary holding, we decline to follow it. Whether plaintiff can prove her claim is not an issue before this court, and we express no opinion as to its merits.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

INGLIS, P.J., and PECCARELLI, J., concur.