**Terry G. VOSK and Arno D. Vosk, Appellants,**

**v.**

**ENCOMPASS INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 10, 2003.
Filed May 17, 2004.

William P. Carlucci, Williamsport, for appellants.

Walter F. Kawalec III, Cherry Hill, NJ, for appellee.

BEFORE: DEL SOLE, P.J., FORD ELLIOTT, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellants, Terry G. Vosk and Arno D. Vosk, ask us to review the order entered in the Clinton County Court of Common Pleas, which sustained the preliminary objections in the nature of a demurrer filed by Appellee, Encompass Insurance Company, and dismissed with prejudice Appellants' complaint alleging entitlement to stacked underinsured motorist benefits. We hold that an executed insurance form rejecting stacked underinsured motorist benefits is not rendered void by a minor, clarifying deviation in the form's title, where the form otherwise complies with 75 Pa.C.S.A. § 1738. Accordingly, we conclude that the trial court properly sustained Appellee's preliminary objection in the nature of a demurrer and dismissed Appellants' complaint with prejudice. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Appellants purchased automobile insurance from CNA Insurance Company ("CNA") [1], and were offered the opportunity to acquire underinsured motorist ("UIM") protection. In accord with Pennsylvania law, Appellants were informed that coverage limits could be stacked [2], in which case Appellants' total coverage would be the

---

1. Appellee's brief points out that the actual insurer was Continental Insurance Company. Encompass Insurance Company is not a legal entity and is merely a service mark.

2. "Stacking" is adding coverage available from different vehicles and/or different policies to provide a greater amount of coverage than would be available under any one vehicle or policy. *See McGovern v. Erie Ins. Group,* 796 A.2d 343 (Pa.Super.2002), *appeal denied,* 570 Pa. 699, 809 A.2d 904 (2002).

sum of the UIM coverage for each of the five vehicles covered by Appellants' policy.

¶ 3 Appellants chose not to stack their coverage and signed a form titled "Rejection of 'Stacked Limits' for Underinsured Motorist Coverage." In March of 2000, a policy was issued to Appellants which provided underinsured, non-stacked limits of $100,000.00 per person and $300,000.00 per accident. The policy was re-issued on March 17, 2001.

¶ 4 On December 16, 2001, Appellant Terry G. Vosk was injured in an automobile accident involving one of the vehicles covered under the policy, a 1996 Chevrolet 2500 truck. Appellants' claim for stacked UIM benefits was subsequently denied by Appellee.

¶ 5 On March 18, 2002, Appellants filed a three count complaint with the trial court seeking fully stacked UIM benefits under their insurance policy. Appellee filed preliminary objections in the nature of a demurrer claiming, *inter alia*, the stacked benefits waiver form was proper to effectuate waiver under the Motor Vehicle Financial Responsibility Law ("MVFRL"). By order dated June 17, 2002, the trial court granted Appellee's preliminary objections and dismissed Appellants' complaint with prejudice. This timely appeal followed.

¶ 6 Appellants raise two issues on appeal:

WHETHER THE [UIM] STACKING WAIVER FORM USED BY [APPELLEE], WHICH DOES NOT CONFORM VERBATIM TO THE STATUTORILY REQUIRED FORM, IS VOID[?]

WHETHER [APPELLANTS ARE] ENTITLED TO STACKED UIM BENEFITS WHERE [THE] UIM STACKING WAIVER FORM USED BY [APPELLEE] AND SIGNED BY A FIRST NAMED INSURED DID NOT CONFORM VERBATIM TO THE STATUTORILY REQUIRED FORM[?]

(Appellants' Brief at 4).

¶ 7 Pennsylvania courts have recognized: When an appeal arises from an order sustaining preliminary objections in the nature of a demurrer, which results in the dismissal of a complaint, the Superior Court's scope of review is plenary. When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. We need not consider the pleader's legal conclusions, unwarranted inferences from facts, opinions, or argumentative allegations.

The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where affirmance of the trial court's order sustaining preliminary objections would result in the dismissal of the action, we may do so only when the case is clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review the trial court's decision for abuse of discretion or an error of law.

\* \* \*

In the context of reviewing preliminary objections in the nature of a demurrer, an abuse of discretion is not merely an error in judgment. Rather, the trial court commits an "abuse of discretion" when its judgment is manifestly unrea-

sonable, or when the law is not applied, or if the record shows that the decision resulted from partiality, prejudice, bias or ill will.

*Werner v. Plater–Zyberk,* 799 A.2d 776, 782–783 (Pa.Super.2002) *appeal denied,* 569 Pa. 722, 806 A.2d 862 (2002) (internal citations and quotations omitted).

■ ¶ 8 In the instant case, Appellants argue the MVFRL requires stacking of UIM benefits on multi-vehicle policies unless the insured waives stacking through execution of a written rejection form as set forth in 75 Pa.C.S.A. § 1738(d)(2). Appellants insist Appellee's waiver did not comply with Section 1738(d)(2) because it was titled "Rejection of 'Stacked Limits' for Underinsured Motorist Coverage," while the title in the statute is "UNDERINSURED COVERAGE LIMITS." Appellants assert Section 1738(e) dictates forms that do not comply with Section 1738(d)(2) are void as a matter of law. We disagree.

■ ¶ 9 "When presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue as we predict our Supreme Court would do." *Ridgeway ex rel. Estate of Ridgeway v. U.S. Life Credit Life Ins. Co.,* 793 A.2d 972, 975 (Pa.Super.2002) (citation omitted). "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." *Moses v. T.N.T. Red Star Exp.,* 725 A.2d 792, 801 (Pa.Super.1999).

¶ 10 Relevant portions of the MVFRL read as follows:

§ 1738. **Stacking of uninsured and underinsured benefits and option to waive**

* * *

**(b) Waiver.**—Notwithstanding the provisions of subsection (a), **a named insured may waive coverage providing stacking of uninsured or underinsured coverages** in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d) Forms.**—

* * *

**(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:**

UNDERINSURED COVERAGE
LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

. . . . . . . . . . .

Signature of First Named Insured

. . . . . . . . . . .

Date

**(e) Signature and date.**—The forms described in subsection (d) **must be signed by the first named insured and dated to be valid.** Any rejection form that does not **comply with this section** is void.

75 Pa.C.S.A. § 1738(b)-(e)(emphasis added).

¶ 11 In *Winslow–Quattlebaum v. Maryland Ins. Group,* 561 Pa. 629, 752 A.2d 878 (2000), our Supreme Court addressed a similar issue regarding minor variations in an insurance form. The Supreme Court explained:

Winslow–Quattlebaum . . . filed [a UIM] claim against [Maryland Ins. Group (Maryland)], which denied coverage, claiming that Winslow–Quattlebaum had declined the optional underinsured motorist protection by signing the rejection form on her original insurance application. Winslow–Quattlebaum brought a declaratory judgment action against Maryland on May 1, 1997, seeking underinsured motorist benefits under the terms of her policy. The trial court found that Winslow–Quattlebaum had rejected the disputed coverage by completing and signing the appropriate form on the application and that, therefore, Maryland had no duty to pay underinsured motorist benefits to her. The Superior Court reversed, finding that the form Winslow–Quattlebaum signed was void because the language offering the option to reject underinsured motorist coverage was not presented alone, on a separate page, pursuant to 75 Pa.C.S. 1731(c.1). Accordingly, the Superior Court directed Maryland to provide UIM coverage to Winslow–Quattlebaum.

The page at issue in the automobile insurance application that Winslow–Quattlebaum filled out contained both the Rejection of Underinsured Motorist Protection and Rejection of Stacked Underinsured Coverage Limits.

\* \* \*

Winslow–Quattlebaum claimed that, because **both** the rejection of underinsured motorist protection and the rejection of stacked underinsured coverage appeared on the same page, her signatures rejecting both options notwithstanding, such rejection is void because the form did not conform to the requirements of section 1731 of the Motor Vehicle Financial Responsibility Law (MVFRL).

Section 1731 of the MVFRL provides the specific language that must appear in the automobile insurance application in order for an insured to validly reject UIM protection. The form that Winslow–Quattlebaum signed contained this precise language.

\* \* \*

In order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1) as follows: the UIM rejection must appear on a sheet separate from the UM rejection; the first named insured must sign the rejection; and the rejection must be dated. Instantly, the UIM form was separate from the UM form and Winslow–Quattlebaum, the first named insured, signed and dated the form.[8] There is, therefore, no basis on which to declare such waiver void as it complies with all the requirements of section 1731(c.1). Accordingly, we hold that Winslow–Quattlebaum validly waived UIM coverage and that Maryland has no duty to provide underinsured motorist coverage to her. 75 Pa.C.S. § 1731(c.1). The

decision of the Superior Court is reversed.

[8] We note that Winslow–Quattlebaum specifically signed in the two designated blanks on the form thereby rejecting *both* UIM coverage and UIM stacking coverage. Thus, there can be no mistake that she signed off on both. We further note that, pursuant to her waiver, Winslow–Quattlebaum was billed for and paid the lower premium that rejection of UIM coverage afforded her.

*Id.* at 630–637, 752 A.2d at 879–882 (some internal footnotes, citations and punctuation omitted); *See also Lewis v. Erie Ins. Exchange,* 568 Pa. 105, 793 A.2d 143 (2002); *Duncan v. St. Paul Fire & Marine Ins. Co.,* 129 F.Supp.2d 736 (M.D.Pa.2001).

¶ 12 This Court recently decided a similar issued with respect to uninsured motorist coverage limits in *Allstate Ins. Co. v. Seelye,* 2004 PA Super 103, 846 A.2d 1286. In *Seelye,* this Court reversed the trial court's determination that an insureds' waiver of stacking for uninsured motorist coverage was invalid where the signed rejection form was titled "Rejection of Stacked Uninsured Coverage Limits" as opposed to the statutory title "Uninsured Coverage Limits." The *Seelye* Court held that the addition of the three words to the form title which had the effect of clarifying the form, did not void the form.

¶ 13 Instantly, there can be no mistake that Appellants rejected stacked benefits by signing the designated form. *See Winslow–Quattlebaum, supra; Seelye, supra.* Appellee's title, "Rejection of 'Stacked Limits' for Underinsured Motorist Coverage," differs only slightly from Section 1738(d)(2) of the MVFRL, which is "UNDERINSURED COVERAGE LIMITS." Appellee's title contains all of the words

used in Section 1738(d)(2). As the trial court reasoned, "[i]nasmuch as [Appellants] signed and dated the form, and the text of the form is identical to the language in the statute ... [Appellants'] rejection of stacked benefits was valid." (Trial Court Opinion, dated August 12, 2002, at 2–3).

¶ 14 Moreover, Section 1738(e) contains two sentences. The first sentence states: "the forms described in subsection (d) must be signed by the first named insured and dated to be valid." In this sentence, Section 1738(d) is clearly referenced. The insurance applicant must sign and date the forms described in subsection (d) for those forms to be valid. The second sentence in Section 1738(e) adds: "Any rejection form that does not comply with this section is void." Unlike the preceding sentence, the second sentence does not reference "subsection (d)." Instead, it merely refers to "this section." Based on this language, the trial court reasoned:

> [S]ection (e) only applied to the signature and date. In other words, the forms in subsection (d) must be signed and dated by the first named insured to be valid, and any form that does not comply with **this** section (section e) is void. Inasmuch as [Appellants] signed and dated the form, and the text of the form is identical to the language in the statute, [the trial court] concluded that [Appellants'] rejection of stacked benefits was valid.

(Trial Court Opinion, at 2) (emphasis in original). We agree with the reasoning of the trial court, and its conclusion that the executed rejection form substantially complies with Section 1738. We reject Appellants' assertion that a minor deviation in the title of the executed form voids Appellants' rejection of stacked benefits.[3] *See*

**3.** However, we must note the potential dan-

gers that are created when insurance compa-

*Winslow–Quattlebaum, supra; Seelye, supra.*

¶ 15 Based on the foregoing, we hold that an executed insurance form rejecting stacked underinsured motorist benefits is not rendered void by a minor, clarifying deviation in the form's title, where the form otherwise complies with 75 Pa.C.S.A. § 1738. *See id.* Thus, we conclude that the trial court properly granted Appellee's preliminary objections and dismissed Appellants' complaint with prejudice. *See Werner, supra.* Accordingly, we affirm the trial court's order.

¶ 16 Order affirmed.

nies add extra words to the section 1738 forms. Here, Appellee's addition of the words "rejection," "motorist," and "for" did nothing to diminish the meaning of the title of the stacked UIM waiver form. Insurance customers could read Appellee's title without being confused regarding what they were about to sign. Nevertheless, we are mindful that in other cases the addition of certain words might serve to confuse insurance applicants. In such cases, this Court will not hesitate to declare such forms inoperative.