Stacy L. BURKS, Appellant

v.

FEDERAL INSURANCE COMPANY,
a Member of the Chubb Group of
Insurance Companies, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 26, 2004.
Filed Aug. 19, 2005.
Reargument Denied Oct. 20, 2005.

John F. Becker, Pittsburgh, for appellant.

Ansley Westbrook, Pittsburgh, for appellee.

Before: BENDER, PANELLA and POPOVICH, JJ.

BENDER, J.:

¶ 1 Stacy L. Burks (Appellant) appeals from the order granting Federal Insurance Company's preliminary objections in Appellant's action against Federal for payment of her medical bills for treatment of injuries that resulted from a fall in one of the branches of PNC Bank. For the reasons that follow, we affirm.

¶ 2 Appellant initially brought an action against PNC for personal injuries she sustained to her wrist and lower·back when she fell in one of PNC's branches. During the trial, Appellant sought compensation for the injuries and damages, which included medical expenses that resulted from the fall. The jury found that Appellant sustained $30,000 in damages as a result of the accident. The jury also found Appellant to be contributorily negligent, and particularly, that 40% of the causal negligence was attributable to her. Thus, the verdict was molded to $18,000. This award was paid in full on PNC's behalf by its insurer, the defendant and the appellee in the instant action, Federal.

¶ 3 After Appellant received the $18,000 for the damages that she sustained in her accident, she then sought to collect payment of her medical bills under the insurance policy between Federal and PNC. The provision under which she sought to recover states:

Subject to the Applicable Limits of Insurance, we will pay each person who sustains **bodily injury** caused by an accident all **medical expenses** incurred and reported to us within three years from the date of the accident.

The accident must take place during the policy period and the **bodily injury** must arise out of premises or operations for which you are afforded **bodily injury** liability coverage under this contract. The injured person must submit to examination, at our expense, by physicians of our choice as often as we reasonably require.

Reproduced Record (R.) at 88a–89a. In her Complaint, Appellant averred that an unidentified individual from PNC instructed Appellant to deliver her medical bills to the PNC branch office for payment. Complaint, 12/23/03, at ¶ 7; R. at 6a. It was further averred on "information and belief" that PNC submitted these bills to Federal, and Federal refused to pay for them. *Id.* at ¶ 8; R. at 6a.

¶ 4 Appellant then filed this action against Federal. Federal filed preliminary objections in the form of a demurrer claiming that Appellant was not a third party beneficiary to the insurance contract between Federal and PNC. The trial court agreed, and therefore, it sustained the preliminary objections and dismissed Appellant's complaint. Appellant then filed this appeal.

¶ 5 Although Appellant has framed three questions for our review, their resolution hinges on one issue: Whether the trial court abused its discretion in determining that Appellant was not a third party beneficiary to the contract between Federal and PNC. In considering this issue, we are mindful that when we review a trial court's order granting preliminary objections in the nature of a demurrer, we apply "the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review." *Vosk v. Encompass Ins. Co.,* 851 A.2d 162, 164 (Pa.Super.2004).

¶ 6 As stated above, the crux of this appeal is whether Appellant is a third party beneficiary to the insurance policy between PNC and Federal. If she is not, then she certainly cannot assert a claim against Federal under the contract. In

*Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147 (1992), our Supreme Court set forth the current standard for determining whether someone is a third party beneficiary to a contract: "[I]n order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Id.* at 149. Furthermore,

> to be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking.

*Spires v. Hanover Fire Ins. Co.,* 364 Pa. 52, 70 A.2d 828, 830–31 (1950). While *Spires* was overruled in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), it was only overruled "to the extent that it states the exclusive test for third party beneficiaries." *Id.* at 751.

¶ 7 In *Guy,* our Supreme Court established a "narrow class of third party beneficiaries." *Scarpitti,* 609 A.2d at 151. This narrow exception established a "restricted cause of action" for third party beneficiaries by adopting Section 302 of the RESTATEMENT (SECOND) OF CONTRACTS (1979), which states:

> § 302 Intended and Incidental Beneficiaries
>
> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if

recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and either*

> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Guy,* 459 A.2d at 751 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 302 (1979)). The court explained that Section 302 involves a two-part test to determine whether one is a third party beneficiary to a contract, which requires that:

> (1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Guy,* 459 A.2d at 751 (quotation marks omitted).

¶ 8 Therefore, even when the contract does not expressly state that the third party is intended to be a beneficiary, as in the instant case, the party may still be a third party beneficiary under the foregoing test. But *Guy* did not alter the requirement that in order for one to achieve third party beneficiary status, that party must show that *both* parties to the contract so intended, and that such intent was within the parties' contemplation at the time the contract was formed.

¶ 9 The exception annunciated in *Guy* was applied in *Scarpitti,* where the court

held that the plaintiffs, who had purchased real estate lots in a residential subdivision, were third-party beneficiaries to the contract between the subdivision developer and the architect even though the contract did not state that the lot owners were third party beneficiaries. *See Scarpitti*, 609 A.2d at 151. In *Scarpitti*, the plaintiffs had submitted building plans to the architect who, pursuant to the contract between himself and the subdivision developer, was to enforce building restrictions within the subdivision. The plaintiffs' building plans included three-car garages for the homes. The architect disapproved these plans because they were in violation of a building restriction that required each home to have either a two or two and one-half-car garage. The plaintiffs then built their homes accordingly with either two or two and one-half-car garages. Subsequently, the architect approved building plans for homes with three-car garages for other lot owners.

¶ 10 The plaintiffs then brought an action against the architect for breach of contract under the theory that they were third party beneficiaries to the contract between the subdivision developer and the architect. The court began its analysis by expounding upon the meaning of the two-part test set forth in *Guy* as follows:

> The first part of the test sets forth a standing requirement which leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate. The second part defines the two types of claimants who may be intended as third party beneficiaries. If a party satisfies both parts of the test, a claim may be asserted under the contract.

*Scarpitti*, 609 A.2d at 150.

¶ 11 The *Scarpitti* court reasoned that because in the underlying contract the architect promised to review all building plans and enforce restrictions within the subdivision, "the purpose of this agreement was to make the lots more attractive to prospective purchasers by assuring that other homeowners in the subdivision would be required to abide by the recorded subdivision restrictions." *Id.* at 151. Accordingly, **"at the time of contracting,"** *both* parties contemplated that the subdivision lot owners would be third party beneficiaries to the contract because the future home owners would have the greatest interest in uniform enforcement of the building restrictions, and they would be the ones primarily "benefited by the establishment of a vehicle to enforce the restrictions." *Id.* (emphasis added). The court held that although the contract did not expressly state that the parties intended to benefit the future home owners, the circumstances were "so compelling" that "recognition of a right to uniform enforcement of the deed restrictions in [the plaintiffs] is appropriate to effectuate the intention of the parties." *Id.* at 150–51.

¶ 12 Guided by the foregoing precedent, we find the central issue in this case to be whether the trial court abused its discretion in determining that Appellant did not meet the first part of this test because granting her standing would not be appropriate to effectuate the intention of Federal and PNC. The Honorable R. Stanton Wettick, Jr., presided over this matter in the trial court, and he sustained Federal's preliminary objections on the basis of a previous opinion issued in the case of *Newman v. CAN Commercial Ins. Co.*, No. AR99–1170 (Allegheny 1999), wherein he stated:

> Plaintiff argues that Coffee Cafe "being a restaurant that strives to accommodate its patrons" intended that its patrons be third party beneficiaries of the policy. Plaintiff states that it makes no sense for the insurance company to

charge a premium for a benefit that it will pay only if it chooses to do so.

My difficulty with this argument is that it assumes that Coffee Cafe and its insurance company both intended that no decisions about paying medical benefits regardless of fault could be made by either party. The insurance policy is not posted on the walls of Coffee Cafe. Consequently, the patron is not going to know that there is insurance providing for payment of medical benefits unless Coffee Cafe chooses to trigger the provisions providing for payment of medical expenses regardless of fault by paying the customer's medical expenses and looking to the insurance company for reimbursement or by advising the customer and the insurance company that payment of the medical expenses should be made.

The purpose of the provision providing for payment of medical expenses regardless of fault is to further Coffee Cafe's business interests. Payment is not necessarily consistent with these business interests. There will be situations in which Coffee Cafe wishes the insurance company to pay the medical expenses of a customer injured on the premises regardless of fault in order to maintain goodwill. However, there may be other situations where Coffee Cafe may not want the payments to be made unless the injured party agrees not to bring suit for other damages, where Coffee Cafe does not want payments to be made because of the fear of increased insurance premiums, or where Coffee Cafe does not want to accommodate the injured party.

Consider, for example, the situation in which a patron was injured on the premises when he attacked, while intoxicated, two employees of Coffee Cafe who had asked him to leave the premises. Coffee Cafe never intended for its insurance policy to be construed to require payment of medical expenses in this situation. Coffee Cafe, instead, intended to retain the option to decide when to provide these benefits because retention of the option is most consistent with its business interests.

*Id.* at 5–6. We agree with Judge Wettick's well-reasoned opinion.

¶ 13 On appeal, Appellant argues that "having submitted the medical expense payment to the Manager of PNC for payment as she was instructed, the bank intended to give [Appellant] the benefit of the promised performance of her medical expenses therefore making [Appellant] an intended third party beneficiary of the contract as set forth under Pennsylvania law." Brief for Appellant at 9. There are two problems with this argument. First, even if we were to assume that PNC's actions somehow demonstrated an intent to benefit Appellant, it is not only PNC's intent with which we are here concerned. In addition, Appellant must show that Federal also intended to benefit Appellant, as one party to a contract may not unilaterally designate a third party as a beneficiary without the other party to the contract also intending the same. Second, PNC's actions occurred well after PNC and Federal entered into their contract, and in order to determine whether someone is a third party beneficiary, we must attempt to discern the parties' intent at the time of contracting. *See Scarpitti,* 609 A.2d at 151.

¶ 14 And when we consider PNC's intent at the time of contracting, it seems clear that its intention was to procure medical payment coverage that would permit PNC to compensate an individual for bodily injury sustained on its premises *if it chose to,* and independent of its actual legal liability to compensate the individual. In a

similar case, the Illinois Appellate Court set forth some reasons why an insured would want such coverage:

> We do not find that the insurance contract between Sears and Allstate contemplates a direct action against the insurer for an injured party's medical expenses whenever any person is injured on the insured premises of a Sears store. The medical payments coverage may be viewed as a salutary attempt to *allow*, but not require, Sears to pay relatively small, easily ascertainable medical reimbursements, without a formal determination of fault. This would allow Sears, as insured, to facilitate settlement of some claims by paying actual medical costs without admitting or contesting liability.... Moreover, absent such a provision allowing the insured to pay medical expenses, the insured would risk waiving its claim for indemnity against the insurer if the insured went ahead and voluntarily assumed payment for the injured party's medical expenses.

*Zegar v. Sears Roebuck & Co.*, 211 Ill. App.3d 1025, 156 Ill.Dec. 454, 570 N.E.2d 1176 (1991).

¶ 15 Thus, the coverage which PNC purchased from Federal would serve many of its own interests. At its discretion, it could choose when to trigger the medical payments coverage, and in so doing it could consider several factors that serve its best interests. For instance, whether the injured person was an important customer, whether PNC was entirely at fault, or whether the injury was relatively minor. Conversely, it may decide not to trigger the coverage because the individual injured was entirely to blame for the accident as a result of his or her own negligence. Furthermore, the amount of money that Federal would pay out under the medical payment coverage would certainly affect PNC's premiums. Consequently, PNC would undoubtedly seek to exercise control over when such a claim could be made.

¶ 16 To hold otherwise would be to confer a blanket accidental medical insurance policy to all individuals that sustain bodily injury that arise out of PNC's operation of its premises for which it has bodily injury liability coverage. Such medical payment coverage would exist regardless of the identity of the individual injured or whether that person was entirely at fault for the injury. Most importantly, PNC, the contracting party that pays the premiums for the coverage, would have absolutely no control over when to trigger the coverage. We cannot agree that this was the intention of PNC at the time that it contracted for this coverage.

¶ 17 Likewise, there is nothing in the insurance policy or the circumstances surrounding this case that would indicate that Federal intended to permit a direct claim against itself for medical payment coverage. In fact, the insurance policy contains a provision that sets forth the circumstances under which a party may bring legal action against Federal. Reproduced Record at 99a. It *does not state* that an individual may directly sue Federal for payment of medical bills under the medical coverage provision, which demonstrates that the legal action provision was written with the intent of insulating Federal from direct causes of action, intending instead to divert these claims to proceed directly against PNC, for which Federal may then be liable under its policy with PNC.

¶ 18 Thus, we conclude that the trial court did not abuse its discretion in holding that recognizing Appellant as a third party beneficiary would not be appropriate to effectuate the intent of PNC and Federal at the time that they entered into the insurance contract. While persons injured

on PNC's premises would benefit from PNC's triggering of its medical payment coverage, unlike in *Scarpitti*, the benefit of the contract is not meant to primarily protect these individual's interests.

¶ 19 In conclusion, we also note that Appellant has wholly ignored the fact that she filed a previous action against PNC sounding in negligence in which she sought to recover damages for the injuries that she sustained as a result of the accident. Reproduced Record (R.) at 7a. The certified record contains Federal's Brief in Support of Preliminary Objections, in which it states that in Appellant's suit against PNC, she sought payment for the medical expenses that she incurred as a result of the accident. Indeed, this is certainly a reasonable inference from the fact alleged in Appellant's Complaint that her suit against PNC was to collect damages for the injuries that she sustained as a result of PNC's negligence. *See Vosk v. Encompass Ins. Co.*, 851 A.2d 162, 164 (Pa.Super.2004) (stating that when reviewing a court's order granting preliminary objections in the nature of a demurrer, "an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review"). We cannot imagine a situation in which an attorney would not seek to recover medical expenses in a personal injury action. Nor can we discern a reason why a jury would not award medical expenses to a plaintiff when the jury has found that the defendant's negligence is the proximate cause of the plaintiff's injuries.

¶ 20 Thus, we conclude that a jury has already compensated Appellant for the payment of her medical expenses. And in doing so, the jury determined that due to Appellant's contributory negligence, she was responsible for 40% of these damages. Appellant should not now be permitted to seek payment for $10,000 of her medical expenses when a jury has already determined that she was partially to blame for the accident.[1] Furthermore, to permit a plaintiff to file two actions, one sounding in negligence against the insured, and a second for breach of contract against insurer, would unsalutarily encourage the multiplicity of lawsuits. *See Trouten v. Heritage Mut. Ins. Co.*, 632 N.W.2d 856, 862 (S.D. 2001).

¶ 21 Order **AFFIRMED**.

¶ 22 Judge PANELLA files a dissenting opinion.

PANELLA, J., dissenting:

¶ 1 The issue in this case is whether Burks, as a purported medical payment claimant, is an intended third party beneficiary under the insurance contract. If Burks, as a claimant for medical payments, is a third party beneficiary, then she has the accompanying right to proceed directly against Federal for its refusal to pay medical benefits due under the contract. Unlike the Majority, I find that Burks is an intended third party beneficiary, and therefore, has a cause of action against Federal. Accordingly, I respectfully dissent.

¶ 2 On April 6, 2001, Burks fell inside a branch office of PNC Bank, N.A., and sustained injuries to her left wrist and lower back. At the time of Burks' fall, the bank carried general liability insurance provided by Federal. The bank's insurance included a medical payments provi-

---

1. We note that the insurance policy contains a $10,000 limit for claims under the provision for which Appellant seeks payment.

sion which provided a coverage limit on medical expenses of $10,000.00.

¶ 3 Following her fall, Burks filed suit against the bank alleging negligence seeking to recover damages for injuries she sustained as a result of the fall. A jury trial was held on October 30, 2003, after which, Burks was awarded $30,000.00 in damages. The jury found the bank to be 60% negligent and Burks 40% comparatively negligent. As Burks was found 40% negligent in causing her fall, the damage award was molded to take into account her negligence, and thus, Burks received $18,000.00 in damages from the bank.

¶ 4 Burks filed suit against Federal on December 23, 2003, alleging that under the insurance contract's medical payments provision she was an intended third party beneficiary to the bank's insurance contract with Federal.[2] As such, Burks contended that she was entitled to collect, in addition to the $18,000.00 she already received, the $10,000.00 policy limit for medical expenses incurred as a result of the injuries she sustained in the fall.

¶ 5 Thereafter, on January 21, 2004, Federal filed preliminary objections to Burks' complaint, which included a demurrer. Specifically, Federal argued that Burks was not an intended third party beneficiary to the insurance contract. The trial court agreed and dismissed Burks' complaint on February 5, 2004.

¶ 6 The standard of review where there is a challenge to the sustaining of preliminary objections in the nature of a demurrer is well-settled: The material facts set forth in the complaint and all inferences reasonably deducible therefrom are admitted as true. *See Price v. Brown,* 545 Pa. 216, 221, 680 A.2d 1149, 1151 (1996). "The

question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Id.* (citation omitted).

¶ 7 The purpose of the medical payments provision "is to grant peace of mind and create a fund for the payment of medical services so that those injured [*e.g.,* the insured's customers] will not necessarily be contemplating how to impose liability upon the insured." *Harper v. Wausau Insurance Co.,* 56 Cal.App.4th 1079, 1090, 66 Cal.Rptr.2d 64 (1997) (quoting 8A Appleman & Appleman, *Insurance Law and Practice* (1981) § 4902, pp. 228–229). Moreover,

> [m]edical payment clauses are considered to constitute separate accident insurance coverage. Such coverage is divisible from the remainder of the policy, and creates a direct liability to the contemplated beneficiaries.... Such provision is the separate obligation of the insurer, independent of its obligation to pay sums of money as damages under the liability features of the contract.... Nor is liability for such payment in any way dependent upon negligence of the insured ....

*Id.,* at 1090, 66 Cal.Rptr.2d 64 (quoting 8A Appleman & Appleman, *Insurance Law and Practice* (1981) § 4902, pp. 228–229).

¶ 8 With the foregoing in mind, our Supreme Court adopted Section 302 of the Restatement (Second) of Contracts in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), and held that the inquiry into third

---

2. In her complaint against Federal, Burks alleges, and we must accept it as true, that the bank requested her medical bills so that they could be forwarded to Federal for payment and that Burks complied with the bank's request. The complaint, however, does not allege when the bank made its request.

party beneficiary status is examined under the following two part test:

(1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.,* at 60, 459 A.2d at 751 (internal quotation marks omitted). The first part of the test sets forth a standing requirement which permits the trial court to determine whether third party beneficiary status is appropriate in a particular case. *See Clifton v. Suburban Cable TV Co. Inc.,* 434 Pa.Super. 139, 642 A.2d 512, 514 (1994), *appeal denied,* 538 Pa. 664, 649 A.2d 667 (1994), *cert. denied,* 513 U.S. 1173, 115 S.Ct. 1152, 130 L.Ed.2d 1110 (1995). The second part of the test defines the two types of claimants who may be intended as third party beneficiaries. *Id.* If a claimant does not satisfy the two part test, the claimant is an incidental beneficiary and, as such, has no right to enforce the agreement. *See Weavertown Transport Leasing, Inc. v. Moran,* 834 A.2d 1169, 1173 (Pa.Super.2003), *appeal denied,* 578 Pa. 685, 849 A.2d 242 (2004). If, however, a claimant satisfies the two part test, the claimant is an intended third party beneficiary and has the same rights and limitations in the contract as those of the original contracting parties. *See Miller v. Allstate Insurance, Co.,* 763 A.2d 401, 405 n. 1 (Pa.Super.2000).

¶ 9 With these principles in mind, one must examine the medical payments provision to determine whether Burks was an intended third party beneficiary to the contract between the bank and Federal.

The medical payments provision provides as follows:

Subject to the applicable Limits of Insurance, **we will pay each person who sustains bodily injury caused by an accident all medical expenses incurred** and reported to us within three years from the date of the accident.

**The accident must take place during the policy period and the bodily injury must arise out of premises or operations for which you are afforded bodily injury liability coverage under this contract.** The injured person must submit to examination, at our expense, by physicians of our choice as often as we reasonably require.

General Liability Contract, 9/1/00–9/1/01, Schedule of Forms, referencing Form No. 17–02–3080 (ed. 4/95) (emphasis added).

¶ 10 After review, I find that Burks is an intended third party beneficiary under the insurance policy's medical payments provision. A reading of the plain language of the provision and the purpose behind its inclusion in the policy demonstrates that the parties intended to benefit injured third parties such as Burks. For instance, the provision broadly states that the insurer "will pay each person who sustains bodily injury" and such payment, it should be noted, is made regardless of fault. *See, e.g., Garcia v. Lovellette,* 265 Ill.App.3d 724, 203 Ill.Dec. 376, 639 N.E.2d 935, 939 (2nd Dist.1994) ("The insurer's obligation is in no way dependent upon the negligence of the policyholder."). I also find that the third party beneficiary relationship was within the bank's and Federal's contemplation at the time of contracting. After all, the insurer drafted incredibly broad policy language with respect to the medical payments provision and the bank opted for such coverage in its insurance contract-the very purpose of which was to

benefit individuals, like Burks, who are injured on the premises.

¶ 11 The provision is not designed to protect the insured from its legal liability, but rather to insure the payment of the injured third party's medical expenses. *See, e.g., Harper v. Wausau Insurance Co.,* 56 Cal.App.4th 1079, 1091, 66 Cal. Rptr.2d 64 (Cal.Ct.App.1997) (medical payments provision's purpose is to provide payment of injured party's medical expenses and not for protection of insured against legal liability). The fact that the bank requested that Burks forward to it her medical bills for payment by Federal, is simply further evidence which clearly demonstrates that Burks was part of a limited class of persons intended to benefit from the agreement between Federal and its insured.[3] Therefore, I would find that Burks is an intended third party beneficiary, and thus, has a cause of action against Federal.

¶ 12 I also note that my conclusion that Burks is an intended third party beneficiary is in accord with the vast majority of jurisdictions that have considered this issue. Across the country, courts that have addressed this issue have held that injured claimants are intended third party beneficiaries under medical payments provisions. *See, e.g., Donald v. Liberty Mutual Insurance Co.,* 18 F.3d 474, 481 (7th Cir.1994); *United States v. Nationwide Mutual Insurance Co.,* 499 F.2d 1355, 1358 (9th Cir. 1974); *United States v. United Services Auto. Association,* 1991 WL 152793, *3 (D.Kan.1991); *Holmes v. Federal Insurance Co.,* 353 Ill.App.3d 1062, 289 Ill.Dec.

750, 820 N.E.2d 526, 529–530 (5th Dist. 2004); *Prince v. Louisville Municipal School District,* 741 So.2d 207, 212 (Miss. 1999); *Harper v. Wausau Insurance Co.,* 56 Cal.App.4th 1079, 1090, 66 Cal.Rptr.2d 64 (Cal.Ct.App.1997); *Hunt v. First Insurance Company of Hawaii, Ltd.,* 82 Hawai'i 363, 922 P.2d 976, 981 (Ct.App.1996); *Garcia v. Lovellette,* 265 Ill.App.3d 724, 203 Ill.Dec. 376, 639 N.E.2d 935, 940 (2nd Dist. 1994); *Desmond v. American Insurance Co.,* 786 S.W.2d 144, 146–147 (Mo.Ct.App. 1989); *Roach v. Atlas Life Insurance Co.,* 769 P.2d 158, 161 (Okla.1989); *Maxwell v. Southern American Fire Insurance Co.,* 235 So.2d 768, 770 (Fla.Dist.Ct.App.1970); *Beschnett v. Farmers Equitable Insurance Co.,* 275 Minn. 328, 146 N.W.2d 861, 865 (1966); *Nagy v. Lumbermens Mutual Casualty Co.,* 100 R.I. 734, 219 A.2d 396, 398 (1966). *But see Schmalfeldt v. North Pointe Insurance Co.,* 469 Mich. 422, 670 N.W.2d 651, 654–655 (2003) *(per curiam)* (concluding that medical payments provision does not specifically designate injured patrons as intended third party beneficiaries of the medical payments provision); *Trouten v. Heritage Mutual Insurance Co.,* 632 N.W.2d 856, 862 (S.D.2001) (citing *Zegar v. Sears Roebuck and Co.,* 211 Ill. App.3d 1025, 156 Ill.Dec. 454, 570 N.E.2d 1176, 1179 (1st Dist.1991) and declining to find that injured claimant under medical payment provision is an intended third party beneficiary); *Zegar,* 156 Ill.Dec. 454, 570 N.E.2d at 1179 (noting that while injured claimant under medical payment provision "may be viewed as a third party beneficiary" that the "coverage provisions

---

3. I note that the insurance contract at issue contains a "no direct action" clause, but that it prohibits only "a suit asking for damages from an insured." General Liability Contract, 9/1/00–9/1/01, Schedule of Forms, referencing Form No. 17–02–3080 (ed. 4/95). It is well-established in other jurisdictions, however, that "[a] suit to collect under the medical expenses provision is not a suit asking for damages from the insured." *Holmes v. Federal Insurance Co.,* 353 Ill.App.3d 1062, 289 Ill.Dec. 750, 820 N.E.2d 526, 529 (5th Dist. 2004).

of an insurance policy are primarily for the benefit of the contracting parties and only incidentally for injured claimants").[4]

¶ 13 Lastly, I cannot agree with the Majority's conclusion "that a jury has already compensated Appellant for the payment of her medical expenses." Majority Opinion, at 13. The Majority's conclusion stems from Federal's argument that Burks has already received a satisfaction in damages for her medical expenses resulting from her injuries, and thus, is barred from recovering those same expenses again. *See, e.g., Rossi v. State Farm Automobile Insurance Co.,* 318 Pa.Super. 386, 465 A.2d 8, 10 (1983) ("An injured party cannot recover twice for the same injury."). In support of its argument, Federal directs this Court's attention to the verdict slip from Burks' suit against the bank. The verdict slip, however, is a general liability verdict slip, and, as such, does not apportion damages for medical expenses; it simply states that Burks' damages were for $30,000.00. Thus, I cannot ascertain from the verdict slip whether the damages represent compensation for pain and suffering *and* medical expenses, for example, or simply for one *or* the other. Likewise, I disagree with the Majority that we can simply infer that an attorney would "not seek to recover medical expenses in a personal injury action." Majority Opinion, at 1092.

¶ 14 In short, there is nothing in the certified record which discloses whether Burks included a claim for medical expenses in her suit against the bank. Thus, I am unable to conclude that Burks is barred from recovering her medical expenses.

---

4. The Majority cites *Zegar* as supporting its conclusion that application of the medical payments provision is discretionary with the insured. *See* Majority Opinion, at 9–10. As noted, two other Illinois Appellate Districts have specifically refused to follow *Zegar. See* *Holmes v. Federal Insurance Co.,* 353 Ill. App.3d 1062, 289 Ill.Dec. 750, 820 N.E.2d 526, 529–530 (5th Dist.2004); *Garcia v. Lovellette,* 265 Ill.App.3d 724, 203 Ill.Dec. 376, 639 N.E.2d 935, 940 (2nd Dist.1994).