

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2008

# Katz v. Westfall

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2692

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Katz v. Westfall" (2008). *2008 Decisions*. Paper 738.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/738

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2692

_____

DAVID H. KATZ;
BARBARA D. KATZ,
Appellants

v.

TOWNSHIP OF WESTFALL; KEITH PETERS;
KENNETH THIELE; JAMES MUIR,
as members of the Township of Westfall
Board of Supervisors, in their individual capacities

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 03-cv-02377)
District Judge:  Honorable Thomas M. Blewitt

_____

Submitted Under Third Circuit LAR 34.1(a)
July 3, 2008

Before:  RENDELL, SMITH and FISHER, <u>Circuit</u> <u>Judges</u>.

(Filed August 1, 2008)

_____

OPINION OF THE COURT

_____

RENDELL, *Circuit Judge.*

David H. Katz and Barbara D. Katz ("the Katzes") appeal the Magistrate Judge's order granting the motion of Township of Westfall ("the Township") under Federal Rule of Civil Procedure 60(b) to set aside the judgment against it. For the reasons that follow, we will reverse the Magistrate Judge's ruling and reinstate the judgment.

Because we write only for the parties, we will set forth only those facts relevant to our analysis. The Katzes own approximately 740 acres of residential property ("Rosetown") and 3.4 acres of commercial property located in Westfall Township, Pennsylvania. Since 1994, the Katzes have been involved in litigation with the Township, centering around the properties. In 1999, the Katzes won a $7 million judgment against the Township. In 2001, the Katzes entered into an Equitable Settlement Agreement ("ESA"), and shortly thereafter a Settlement Agreement/Release ("SAR"), with the Township pursuant to which the Township would serve the Katzes' property with central/public sewer and water systems in return for the Katzes' compromising the $7 million judgment against it. In December 2003, after the Township failed to comply with the ESA/SAR, the Katzes filed an action for breach of contract. The Magistrate Judge issued a memorandum and order, finding that the Township had failed to provide water and sewer services, and subsequently issued another order ("the August 2005 Order"), clarifying and defining the requirements under the ESA/SAR decree, giving the Township an 18-month extension to comply fully with them.

As is relevant to our decision, the August 2005 Order required, *inter alia*, that the Township enter into contracts to provide water service to the Katzes' property with the Katzes named as third-party beneficiaries.[1] The third-party beneficiary status was necessary to enable the Katzes to enforce and protect their rights to water service because the Township would be contracting with an outside utility company to deliver the requisite services, not providing them itself. Pursuant to the August 2005 Order, water and sewer service was to be provided to Rosetown within 18 months, that is, on or before February 4, 2007.

The August 2005 Order also made clear that the Township's failure to comply with the ESA/SAR or the Order would result in the entry of a money judgment against it. It stated, "[i]f the Township does not fully comply with any and all terms, obligations and duties contained in the ESA/SAR and/or this Order, the Township stipulates that Judgment shall be entered against it granting Katz all remedies and damages requested . . . ." (App. 37.) Pursuant to the August 2005 Order, the Township executed a stipulated judgment which the Katzes were to hold "until such time as there is a breach of the ESA/SAR and/or this Order when the Stipulation may be filed by Katz with the Court

---

[1]The relevant portion of the August 2005 Order states: "The Township shall provide 1,571 EDUs of water capacity to the Katz Properties and shall construct the water line to the property line of the Westfall Commercial Property and to the entrance to Rosetown at Rosetown Trail to accommodate the Katz Uses and the Katz Properties. The Township shall enter into one or more contracts with Utilities, all with Katz as third party beneficiary, to provide the water capacity and lines." (App. 31.)

3

Clerk and Judgment will be entered by the Court for Katz." *Id*. The stipulated judgment also required the Township to pay any litigation costs and expenses the Katzes incurred to enforce the ESA/SAR and the August 2005 Order.

On December 27, 2006, the Katzes received a form of water service agreement ("WSA") between the Township and the Matamoras Authority for their properties. It required that the Katzes sign as parties to the contract and indemnify the Matamoras Authority "from any and all actions, claims, and demands arising from or by virtue of this Agreement . . . ." (App. 227.) The Katzes refused to sign the proposed WSA, claiming that it failed to provide them with third-party beneficiary status and, therefore, did not comply with the ESA/SAR Decrees and the August 2005 Order. They received no other water service agreements and Rosetown did not receive the requisite water capacity by February 4, 2007.

Claiming various breaches of the ESA/SAR Decrees and the August 2005 Order, the Katzes filed the stipulated judgment with the District Court on February 16, 2007. Pursuant to the stipulated judgment, they also filed a Motion for Litigation Costs and Expenses incurred to enforce the ESA/SAR. In response, the Township moved to set aside the judgment under Federal Rule of Civil Procedure 60(b), alleging that the Katzes were mistaken, acted in bad faith, and the judgment was void because the Township had

4

not committed any breach.[2] After a hearing, the Magistrate Judge concluded that the Township had not breached any provision of the August 2005 Order and consequently the filing of the stipulated judgment was not justified. The Magistrate Judge issued an order granting the Township's 60(b) motion and setting aside the stipulated judgment. He also, therefore, denied the Katzes' Motion for Litigation Costs and Expenses without prejudice. On June 4, 2007, the Katzes timely appealed, requesting that we reinstate the judgment.

Due to the "overriding interest in the finality and repose of judgments," *Mayberry v. Maroney*, 558 F.2d 1159, 1164 (3d Cir. 1977), a Rule 60(b) motion is considered "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Plisco v. Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967). We review a decision to grant a Rule 60(b) motion for abuse of discretion. *See Bohus v. Beloff,* 950 F.2d 919, 924 (3rd Cir. 1991). We will find an abuse of discretion when "'the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999) (en banc) (quoting *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)).

---

[2]Rule 60(b) provides: "On motion for just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) a void judgment; (5) the satisfactions, release or discharge of a judgment or inequity in the prospective application of the judgment; or (6) any other reason justifying relief from operation of the judgment." Fed. R. Civ. P. 60(b).

5

The Katzes claim numerous errors that require reversal of the Magistrate Judge's order and reinstatement of the stipulated judgment. We need not reach all of their arguments, however, because we find that the Magistrate Judge's conclusion – that the Katzes were third-party beneficiaries to the WSA as required by the ESA/SAR Decree and the August 2005 Order – was erroneous and, therefore, the entry of the Rule 60(b) order was an abuse of discretion.

Under the settlement decrees, the Township agreed to make the Katzes third-party beneficiaries to all contracts to provide water capacity and lines. The contracts were supposed to bind the Township and the water service provider to the benefit of the Katzes' Rosetown property, thereby entitling the Katzes to enforce the contract or receive compensation should any breach occur. The proposed WSA, however, names the Katzes as parties to the agreement and requires them to indemnify the water service provider against any claims arising from the agreement. Clearly, the proposed WSA does not bestow third-party beneficiary status on the Katzes. It instead identifies them as actual parties throughout. It provides that "[f]ollowing completion of the Township Project or a portion thereof and connection of the Properties or portions thereof to the Borough Authority System, Katz shall be responsible for all water rates imposed by the Borough Authority." (App. 226.) Indicating the Katzes' intended status as parties, a later provision states:

> In the event of a default of this Agreement by Katz, the Township, or the Township Authority, this Agreement may be terminated at will by the Borough Authority, and, upon such termination, the Borough Authority shall have no obligation to provide water service to the Properties . . . .

*Id*. Similarly, in return for the services agreed to by Matamoras, the Katzes would be required to release, indemnify and hold harmless Matamoras from "any and all actions, claims, and demands arising from or by virtue" of the WSA. (App. 227.)

Notwithstanding these many provisions, the Township argues that the paragraph of the WSA entitled "Assignment," which states "it is understood and agreed that the water capacity reserved hereunder is for the benefit of the Properties and Katz, and, as such, may be assigned, transferred, or subleased to successors in interest," (App. 227), represents the parties' agreement that the Katzes be third-party beneficiaries. This is without any merit. The very language the Township cites merely states that the Katzes' rights as parties to the agreement are assignable. Neither that paragraph nor any other in the WSA identifies the Katzes as third-party beneficiaries. Furthermore, by definition, a party to an agreement cannot be a third-party beneficiary to that same agreement. *Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 424 (3rd Cir. 1999) (quoting *Visor Builders, Inc. v. Devon E. Tranter, Inc.*, 470 F. Supp. 911, 923 (M.D. Pa. 1978) ("[A] third-party beneficiary is 'one who, although not a party to the contract, and hence not in privity with the promisor . . . is permitted to enforce the contract between the promisor and the promisee for its (the third-party beneficiary's) benefit.'")). Because the

Katzes were intended parties to the WSA, they cannot also be third-party beneficiaries to the agreement.

Moreover, if the Katzes had executed the WSA, they would have agreed to indemnify the Matamoras Authority with the result that, had the Matamoras Authority violated the contract, they would be without remedy against it. This too indicates their lack of third-party beneficiary status. In order to be a third-party beneficiary, one must be entitled to enforce the contract against the promisor, in this case the Matamoras Authority. *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 526 n.11 (3d Cir. 1996) (citing Restatement (Second) of Contracts § 304). Here, the WSA's indemnification provision would shift legal responsibility for a breach to the Katzes and prevent them from being able to enforce the contract.

The Township advances a second, alternative argument that because the Katzes did not execute the WSA, they are neither parties to it nor required to indemnify the Matamoras Authority and, thus, must be third-party beneficiaries. Despite these assertions, the fact that the Katzes did not sign the WSA does not render them intended beneficiaries, rather than intended parties. *See Shovel Transfer Storage, Inc. v. Penn. Liquor Control Bd.*, 739 A.2d 133, 138 (Pa. 1999) ("It is firmly settled that the intent of the parties to a written contract is contained in the writing itself.").

Under longstanding Pennsylvania law, "in order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an

8

intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992) (citing *Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828, 830-31 (Pa. 1950)). Here, the WSA failed to designate the Katzes as third-party beneficiaries or otherwise indicate the parties' intention to do so. Although the Pennsylvania Supreme Court has carved out a narrow exception to the general rule that a contract expressly state that a third party is intended to be a beneficiary,[3] this exception "[does] not alter the requirement that in order for one to achieve third party beneficiary status, that party must show that both parties to the contract so intended, and that such intent was within the parties' contemplation at the time the contract was formed." *Burks v. Fed. Ins. Co.*, 883 A.2d 1086, 1088 (Pa. Super. Ct. 2005); *see also Scarpitti*, 609 A.2d 147, 150-51 (noting that "unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties," the intention to benefit the third party must be expressed in the contract itself).

---

[3]The Supreme Court of Pennsylvania has adopted the Restatement (Second) of Contracts § 302 test to evaluate whether a contract designates a third-party beneficiary. *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983). Under this rule, "[u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of the right to performance in the beneficiary is appropriate to effectuate the intention of the parties." Restatement (Second) of Contracts § 302(1).

The terms intended and incidental beneficiary used by the Restatement are more specific terms for "third-party beneficiary," which is "a short hand reference to intended third parties beneficiaries who have the ability to enforce the agreement." *Chen v. Chen*, 893 A.2d 87 (Pa. 2006).

Moreover, it is questionable as to whether the WSA was actually an enforceable agreement, for the Katzes never signed it. The text of the WSA makes clear that the Katzes' execution of the agreement as parties was intended. Not only did the agreement end with signature blocks for each of the Katzes following the declaration "IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their appropriate and authorized signatories," but also stated

> [b]y the execution of this Agreement, Katz, the Township, and the Township Authority hereby expressly represent to the Borough Authority that this Agreement is entered into with full authorization and authority, with full knowledge that the Borough Authority is relying on such representation in entering into this Agreement.

*Id*. at 227-28. In addition to the clear language of the WSA, the testimony and documentary evidence submitted to the District Court amply demonstrate that the Matamoras Authority intended that the Katzes become parties to the WSA and execute it as such. Township Solicitor Gregory Chelak testified that the Matamoras Authority had rejected the first draft agreement, written by him, because it "did not include certain parties that the Matamoras Authority wanted included in the agreement." (App. 91.) Solicitor Chelak further testified that he understood the agreement to require the Katzes to be parties. (App. 106.)

The failure of the Township to secure a water service agreement guaranteeing the Katzes third-party beneficiary status was a breach of the ESA/SAR Decrees and the August 2005 Order. The Magistrate Judge abused his discretion in finding otherwise and

10

granting the Township's 60(b) motion.

Accordingly, we will REVERSE the Magistrate Judge's decision and reinstate judgment for the Katzes. The case will be REMANDED to the Magistrate Judge for further proceedings limited to consideration of the Katzes' Motion for Litigation Costs and Expenses.

_____